

**ORDERED in the Southern District of Florida on February 23, 2022.**



**Peter D. Russin, Judge
United States Bankruptcy Court**

_____

*Tagged Opinion for Publication*

# UNITED STATES BANKRUPTCY COURT
# SOUTHERN DISTRICT OF FLORIDA
# FORT LAUDERDALE DIVISION

In re:

Kesi Jamila Case,

    Debtor.
_____/

Case No. 20-23672-PDR

Chapter 7

F&F Investments Group, LLC,

    Plaintiff,

v.

Kesi Jamila Case,

    Defendant.
_____/

Adv. Case No. 21-01240-PDR

## ORDER GRANTING MOTION TO DISMISS
## <u>AMENDED COMPLAINT</u>

    The Plaintiff, in an effort to transmute what appears to be a dischargeable debt

for breach of contract into a nondischargeable debt for embezzlement under 11 U.S.C.

§ 523(a)(4), relies entirely on conclusory statements that are directly contradicted by the contract attached to the Amended Complaint. Simply put, the Plaintiff has not, and can never, state a cause of action for embezzlement under § 523(a)(4). Because certain pleading defects are incurable, the consequence must be dismissal with prejudice.

## Background

The Amended Complaint alleges that in July 2019, Plaintiff F&F Investments Group, LLC contracted with K&K Design and Construction, LLC to perform work on real property in Fort Lauderdale, Florida. K&K is owned, in part, by Defendant Kesi Jamila Case. Between August 2019 and February 2020, the Plaintiff paid K&K over $250,000.00. Rather than put that money toward performance under the Contract, however, the Defendant allegedly withdrew funds from K&K's bank account for personal use, and K&K subsequently became insolvent. K&K met with the Plaintiff several times and failed to notify the Plaintiff of its insolvency until August 2020.

On December 15, 2020, the Defendant filed her voluntary Chapter 7 petition.[1] The Plaintiff and its principal, Fawzi Faroun, filed this adversary proceeding on July 28, 2021, seeking a determination that the Defendant committed embezzlement under 11 U.S.C. § 523(a)(4) and willful or malicious injury to property under 11 U.S.C. § 523(a)(6). The Defendant moved to dismiss the original complaint and, following a hearing on October 13, 2021, the Court granted the motion because the allegations, even if true, failed to establish that the Plaintiff and the principal had standing.

---

[1] *See In re Case*, No. 20-23672-PDR (Doc. 1) (Bankr. S.D. Fla. Dec. 15, 2020) (the "Main Case").

On November 10, 2021, the Plaintiff amended the complaint which names the Plaintiff, excludes the principal, and alleges a single count for embezzlement under 11 U.S.C. § 523(a)(4). The Defendant seeks dismissal of the Amended Complaint, which the Plaintiff opposes. The Court heard argument on the Motion to Dismiss on January 26, 2022.

## Jurisdiction

The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1334(b). The Court has statutory authority to hear and determine this case under 28 U.S.C. § 157(b)(2)(I) and the general order of reference from the United States District Court for the Southern District of Florida. S.D. Fla. Local Rule 87.2(a). Venue is proper under 28 U.S.C. § 1409.

## Legal Standard

Motions under Rule 12(b)(6) are designed to test the legal sufficiency of the complaint. *See GSW, Inc. v. Long Cty.*, 999 F.2d 1508, 1510 (11th Cir. 1993). To survive a motion to dismiss, the complaint must make factual allegations sufficient "to state a claim for relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). When deciding a motion under Rule 12(b)(6), the Court must limit its consideration to the four corners of the complaint, treat all well-pleaded facts as true, and interpret all facts in the light most favorable to the plaintiff. *See Ortiz v. Deutsche Bank AG (In re Estrategias en Valores, S.A.)*, 628 B.R. 722, 726 n.1 (Bankr. S.D. Fla. 2021) (citing *Resnick v. AvMed, Inc.*, 693 F.3d 1317, 1321–22 (11th Cir. 2012)); *Harvey M. Jasper Retirement Tr. v. Ivax Corp.*, 920 F. Supp. 1260, 1263

(S.D. Fla. 1995) (quoting *Milburn v. United States*, 734 F.2d 762, 765 (11th Cir. 1993)). Though the Court is required to accept the well-pleaded facts as true, it need not accept legal conclusions or other conclusory statements couched as factual allegations. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Papasan v. Allain*, 478 U.S. 265, 286 (1986).

In general, to state a claim, an adversary complaint must satisfy Fed. R. Bankr. P. 7008, which applies Fed. R. Civ. P. 8. Under Rule 8(a)(2), a claim for relief must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Where the adversary complaint asserts a claim for fraud or mistake, however, the allegations must satisfy the heightened pleading standard under Fed. R. Bankr. P. 7009, which applies Fed. R. Civ. P. 9.[2] Under Rule 9(b), allegations must "state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b); *see also Cardenas v. Toyota Motor Corp.*, 418 F. Supp. 3d 1090, 1098 (S.D. Fla. 2019) (explaining that Rule 9(b) applies where a cause of action "sounds in fraud"). To satisfy the heightened pleading standard of Rule 9, the complaint must provide at least "some indicia of reliability" to support the fraud allegations, which may be accomplished by pleading "facts as to time, place, and substance of the defendant's alleged fraud, specifically the details of the

---

[2] The requirements of Rule 9(b) serve "an important purpose in fraud actions by alerting defendants to the precise misconduct with which they are charged and protecting defendants against spurious charges of immoral and fraudulent behavior." *Ziemba v. Cascade Int'l, Inc.*, 256 F.3d 1194, 1202 (11th Cir. 2001) (cleaned up); *see also Metro. Steel, Inc. v. Halversen (In re Halversen)*, 330 B.R. 291, 301 (Bankr. M.D. Fla. 2005) ("The serious nature of fraud requires a plaintiff to plead more than conclusory allegations of fraudulent conduct.") (cleaned up).

defendants' allegedly fraudulent acts, when they occurred, and who engaged in them." *United States ex rel. Clausen v. Lab. Corp. of Am.*, 290 F.3d 1301, 1310–11 (11th Cir. 2002); *see also FindWhat Inv. Grp. v. FindWhat.com*, 658 F.3d 1282, 1296 (11th Cir. 2011); *Ziemba v. Cascade Int'l, Inc.*, 256 F.3d 1194, 1202 (11th Cir. 2001). "Essentially, a plaintiff satisfies Rule 9(b) by alleging who, what, when, where, and how." *State Farm Mut. Auto Ins. Co. v. First Choice Chiropractic & Rehab. Ctr., Inc.*, No. 8:20-cv-330-T-60CPT, 2020 WL 5583516, at *2 (M.D. Fla. Aug. 17, 2020).

## Analysis

The Plaintiff seeks a determination that the Defendant owes it a nondischargeable debt for embezzlement under 11 U.S.C. § 523(a)(4). Under § 523(a)(4), "embezzlement" is "the fraudulent appropriation of property by a person to whom such property has been entrusted, or into whose hands it has lawfully come."[3] *Moore v. United States*, 160 U.S. 268, 269 (1895). Standing to bring an embezzlement claim under § 523(a)(4) requires that the plaintiff own the allegedly embezzled property.[4] *See* 11 U.S.C. § 523(c)(1) (requiring claims under § 523(a)(4) to be brought by "the creditor to whom such debt is owed"); *Mouttet*, 2020 WL 5993925, at *10; *Marbella, LLC v. Cuenant (In re Cuenant)*, 339 B.R. 262, 277 (Bankr. M.D. Fla. 2006).

---

[3] *See, e.g.*, *Talisman Capital Alt. Inv. Fund, Ltd. v. Mouttet (In re Mouttet)*, No. 13-22222-CIV-Marra, 2020 WL 5993925, at *10 (S.D. Fla. Oct. 9, 2020); *Stewart Tilghman Fox & Bianchi, P.A. v. Kane (In re Kane)*, 470 B.R. 902, 938 (Bankr. S.D. Fla. 2012). The Supreme Court has additionally articulated that, "[a]s commonly used, the term 'embezzlement' requires conversion." *Bullock v. BankChampaign, N.A.*, 569 U.S. 267, 275 (2013).

[4] *See also Whittaker v. Whittaker (In re Whittaker)*, 564 B.R. 115, 147 (Bankr. D. Mass. 2017); *Kern v. Taylor (In re Taylor)*, 551 B.R. 506, 521 (Bankr. M.D. Ala. 2016); *Galaz v. Monson (In re Monson)*, 522 B.R. 721, 728 (Bankr. M.D. Fla. 2015); *Brown v. Vega (In re Vega)*, No. 6:10-ap-00299-KSJ, 2012 WL 6021341, at *2 (Bankr. M.D. Fla. Dec. 3, 2012); *Chrysler First Commercial Corp. v. Nobel (In re Nobel)*, 179 B.R. 313, 315 (Bankr. M.D. Fla. 1995).

To plead embezzlement, the plaintiff must allege that (1) "property in the [defendant's] lawful possession but" (2) "belonging to the [plaintiff]" (3) "was appropriated by the [defendant] in a manner inconsistent with the property rights of the [plaintiff] and the scope of [the defendant's] authorization to deal with the property" (4) "with fraudulent intent."[5] *Lenox Pines, LLC v. Smith (In re Smith)*, No. 18-05005-LRC, 2021 WL 1234245, at *10 (Bankr. N.D. Ga. Mar. 31, 2021) (quoting *Reiss v. McQuillian (In re McQuillian)*, 509 B.R. 773, 785 (Bankr. D. Mass. 2014)); *see also Taylor*, 551 B.R. at 521 ("A creditor proves embezzlement by showing that (1) he entrusted property to the debtor, (2) the debtor appropriated the property for a use other than that for which it was entrusted, and (3) the circumstances indicate fraud.") (internal quotation marks omitted).

The Plaintiff contends that (1) K&K and the Defendant were alter egos, (2) it transferred money to K&K under a contract, (2) it entrusted the funds to K&K, (3) the Defendant withdrew the funds for personal use, which was inconsistent with the Plaintiff's rights to the funds because the Plaintiff entrusted them to K&K who earmarked them for the Plaintiff's benefit, and (4) the Defendant acted with fraudulent intent.[6]

---

[5] *See also Whittaker*, 564 B.R. at 147; *Altercare of Vacarre Ctr. for Rehab. & Nursing Care, Inc. v. Donley (In re Donley)*, No. 13-6085, 2014 WL 1577236, at *11 (Bankr. N.D. Ohio Apr. 17, 2014); *In re Garland*, 501 B.R. 195, 201–02 (Bankr. S.D.N.Y. 2013); *Cuenant*, 339 B.R. at 277; *NesSmith Elec. Co., Inc. v. Kelley (In re Kelley)*, 84 B.R. 225, 231 (Bankr. M.D. Fla. 1988).

[6] *See* (Doc. 34 at ¶¶ 15–27, 29, 31, 38, 44, 49, 61–67, 81–83, 85–86). The Court additionally notes that under Rule 9, "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). Throughout the Amended Complaint, the Plaintiff generally alleges that the Defendant acted with fraudulent intent. Accordingly, the Court finds that the Plaintiff has sufficiently pled fraudulent intent and will not address this element further.

The Defendant argues that the Amended Complaint lacks particularity because it relies primarily on conclusory statements and allegations based "upon information and belief." It is axiomatic that "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" under any pleading standard, much less Rule 9's heightened requirements. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (cleaned up); *Twombly*, 550 U.S. at 555 (explaining that "courts 'are not bound to accept as true a legal conclusion couched as a factual allegation'" (quoting *Papasan*, 478 U.S. at 286)). "Information and belief" allegations often fall into this category of pleading.

Factual allegations made on information and belief, to the extent they are not just legal conclusions couched as factual allegations, generally satisfy Rule 8, but not Rule 9. *See Lab. Corp.*, 290 F.3d at 1310; *Mukamal v. BMO Harris Bank N.A. (In re Palm Beach Fin. Partners, L.P.)*, 488 B.R. 758, 767 (Bankr. S.D. Fla. 2013). A plaintiff may only plead upon information and belief under Rule 9 where the facts are "peculiarly within the defendant's knowledge or control" and are accompanied "with factual allegations that make her theoretically viable claim plausible." *USA Nutraceuticals Grp., Inc. v. BPI Sports, LLC*, No. 15-CIV-80352-BLOOM/Valle, 2016 WL 4254257, at *4 (S.D. Fla. Feb. 16, 2016) (quoting *Hill v. Morehouse Med. Assoc., Inc.*, No. 02-14429, 2003 WL 22019936, at *3 (11th Cir. Aug. 15, 2003)). To satisfy Rule 9, therefore, information and belief allegations must include "a statement of the facts on which the belief is founded." *Palm Beach Fin.*, 488 B.R. at 767.

## I.     <u>Defendant's Lawful Possession Through Alter Ego</u>

The first element of embezzlement under § 523(a)(4) requires that the funds were in the defendant's lawful possession. *See Smith*, 2021 WL 1234245, at *10. The Plaintiff contends that the funds came into the Defendant's lawful possession when it paid K&K, as the Defendant's alter ego, to perform under the contract. Without the added component of alter ego, however, this allegation fails to allege that the Defendant lawfully possessed the funds in her individual capacity.

To sufficiently plead alter ego, a plaintiff must allege that: (1) the shareholder dominated and controlled the corporation to such an extent that the corporation's independent existence, was in fact non-existent and the shareholders were in fact alter egos of the corporation; (2) the corporate form was used fraudulently or for an improper purpose; and (3) the fraudulent or improper use of the corporate form caused injury to the claimant. *See Angueira v. Trujillo (In re Trujillo)*, 607 B.R. 734, 740 (Bankr. S.D. Fla. 2019) (citing *Molinos Valle Del Cibao, C. por A. v. Lama*, 633 F.3d 1330, 1349 (11th Cir. 2011)); *see also Estate of Juanita Jackson v. Gen. Elec. Capital Corp. (In re Fundamental Long Term Care, Inc.)*, 507 B.R. 359, 373 (Bankr. M.D. Fla. 2014); *Gasparini v. Pordomingo*, 972 So. 2d 1053, 1055 (Fla. 3d DCA 2008).

The Plaintiff's alter ego statements can be found at paragraphs 15–27 and 61–66 of the Amended Complaint. Some are straightforward examples of conclusory statements. For example, paragraphs 16–18 and 61–66 simply quote the elements of alter ego, state no facts in support, assert legal conclusions, and are, by definition, "threadbare recitals of the elements" that cannot be accepted as facts. *Iqbal*, 556 U.S.

at 678 (cleaned up). Similarly, paragraph 27 merely states that the "Plaintiff has standing to bring this action by virtue of the fact that [K&K] was the alter ego of the Defendant." Whether K&K is the Defendant's alter ego is a legal conclusion that the Court need not accept as true. *See Twombly*, 550 U.S. at 555. These conclusory statements cannot form the basis of the Plaintiff's alter ego theory.

The remaining allegations are based purely "upon information and belief" and, in sum, allege that (1) the Defendant was one of two managers of K&K, (2) K&K was organized and operated without any real formal corporate documents, structure, or system of authority, and (3) the Defendant had access to K&K's bank accounts.[7] These allegations fail to satisfy Rule 9 because, even if the Court determines that the allegations related to K&K's corporate structure (or lack thereof) and the Defendant's access to K&K's bank accounts are peculiarly within the Defendant's knowledge or control, the Amended Complaint does not provide any statement of the facts on which the Plaintiff based its information and belief.[8] *See Palm Beach Fin.*, 488 B.R. at 767.

Further, even if the Court accepted the Plaintiff's allegations and found the Amended Complaint sufficiently pleads that the Defendant, along with her co-manager, operated K&K absent required corporate formalities and that the Defendant had access to K&K's bank accounts, the Amended Complaint stops there. It fails to connect the lack of corporate formalities and the Defendant's access to bank

---

[7] *See* (Doc. 34 at ¶¶ 15, 19–26).

[8] Not much is required to satisfy this standard. The Plaintiff need only provide facts sufficient to give its allegations "some indicia of reliability." *See Lab. Corp.*, 290 F.3d at 1310–11. Where the Plaintiff has provided no explanation of the "information" upon which its "belief" is based, the Court cannot conclude that the allegations satisfy Rule 9.

accounts to facts that suggest the Defendant, despite having a co-manager, "dominated and controlled" K&K to such a degree that its "independent existence, was in fact non-existent." *Trujillo*, 607 B.R. at 740. For example, it is no surprise the Defendant, a principal of K&K, had access to K&K's bank accounts. Missing are any allegations that suggest that the Defendant oversaw all decision-making (despite having a co-manager), commingled her personal funds with K&K's, or did anything else that might suggest K&K's existence as an entity separate and apart from the Defendant is purely fictitious.

The failure to sufficiently plead alter ego prevents the Plaintiff from stating a cause of action for embezzlement against the Defendant individually. On this basis alone, therefore, the Amended Complaint must be dismissed. Though repleading to allege alter ego will be difficult considering that the Defendant co-manages K&K with another individual, the Court does not foreclosure the possibility that the Plaintiff could do so.

## II. <u>Plaintiff's Ownership</u>

The second element of embezzlement under § 523(a)(4) requires the plaintiff to establish its ownership of the property. *See Smith*, 2021 WL 1234245, at *10. The Plaintiff's original complaint alleged that the Plaintiff paid K&K to perform under the contract, that the Defendant withdrew money from K&K's bank account for personal use, and that the Defendant's withdrawals rendered K&K unable to perform. In dismissing the complaint, the Court concluded that such allegations failed to sufficiently plead standing on Plaintiff's embezzlement claim because the

allegations, even if true, would not establish its ownership interest in the funds the Defendant withdrew from K&K's bank account. Presumably to support the notion that the Plaintiff retained some interest in the funds, it now alleges that it "entrusted" the funds to K&K (as the Defendant's alter ego) and that the funds were "earmarked" for Plaintiff.[9]

In support, the Plaintiff provides nothing but conclusory statements. A factual allegation may, for example, allege that there was an agreement between the Plaintiff and K&K whereby the Plaintiff entrusted the funds to K&K for the specific purpose of using those funds to perform under the contract and, in compliance with Rule 9, state with particularity the facts surrounding that agreement rather than generally referencing its existence. The Plaintiff has failed to allege anything in the Amended Complaint remotely resembling a factual allegation supporting entrustment or earmarking.

To whatever extent these conclusory statements could be construed as factual allegations, however, they fail to state with any particularity the circumstances surrounding, or terms of, any purported agreement supporting the assertion that the funds were "entrusted" or "earmarked." Conclusory statements are insufficient under Rule 9, especially considering that the terms of any such agreement between the parties are not the sort of facts that would be peculiarly within the Defendant's knowledge or control. *See Hill*, 2003 WL 22019936, at *3. As a party to the

---

[9] *See, e.g.*, (Doc. 34 at ¶¶ 67 & 83). The Amended Complaint also states that K&K did not own the funds but provides no basis for that fact. *See* (Doc. 34 at ¶ 80). This statement is a legal conclusion that the Court need not accept as fact.

agreement, the Plaintiff would have equal knowledge or control of the facts. Of course, this point is purely academic because the Amended Complaint is devoid of allegations suggesting any such agreement or let alone its specific terms.

The Amended Complaint itself makes this clear by attaching the contract as Exhibit A. The contract states that it "constitute[s] the entire agreement between [the Plaintiff and K&K]" and that the Plaintiff agrees that it "will not rely on any representation or promise not contained herein."[10] Yet, conspicuously absent from the contract, is any language suggesting the funds were "entrusted" or "earmarked." Where the statements and allegations in a complaint contradict the exhibits attached to the complaint, the exhibits control. *See Hoefling v. City of Miami*, 811 F.3d 1271, 1277 (11th Cir. 2016); *Griffin Indus., Inc. v. Irvin*, 406 F.3d 1186, 1205–06 (11th Cir. 2007); *see also United States v. Prat*, No. 1:21-cv-20547, 2022 WL 138475, at *1 n.1 (S.D. Fla. Jan. 14, 2022).

Accordingly, the Plaintiff has not only failed to sufficiently plead its ownership of the allegedly embezzled funds through entrustment or earmarking but has in fact provided the contract which supports the opposite conclusion. Without entrustment or earmarking, the funds the Defendant withdrew from K&K's bank account were owned by K&K, not the Plaintiff, who retained no identifiable interest in the funds after they were transferred.

Further, even if the Plaintiff sufficiently alleges alter ego, without entrustment or earmarking, the Plaintiff still cannot satisfy this element because alter ego merely

---

[10] *See* (Doc. 34-1 at p. 6).

results in the allegation that the Defendant, rather than K&K, owned the funds she withdrew. The Defendant cannot have embezzled funds from herself. *See, e.g.*, *Faw v. Wiles (In re Wiles)*, 166 B.R. 975, 980 (Bankr. M.D. Fla. 1994) (explaining that "one cannot embezzle one's own property"). The Court therefore concludes, as it must, that the Plaintiff has not, and can never, sufficiently plead that it maintained any interest in the funds paid to K&K.

### III.  Misappropriation for Personal Use

The third element of embezzlement under § 523(a)(4) requires that the defendant appropriated the funds in a manner inconsistent with the rights of the plaintiff and the scope of the defendant's authorization to deal with them. *See Smith*, 2021 WL 1234245, at *10. Here, the Plaintiff attempts to plead misappropriation by stating that the Defendant withdrew the funds for personal use and that doing so was inconsistent with the Plaintiff's rights retained through its entrustment of the funds to K&K (as the Defendant's alter ego) and the scope of the authorized uses of the funds because they were earmarked for the Plaintiff's benefit.

#### A.  Personal Use

The Plaintiff's allegations that the Defendant withdrew the funds from K&K's bank account for personal use are based on "information and belief."[11]  While the Plaintiff specifically pled the withdrawals from K&K's bank account, it fell short by not providing any "information" to support its "belief" that it was the Defendant who withdrew the funds and that she did so for personal use. That information is neither

---

[11] *See, e.g.*, (Doc. 34 at ¶¶ 32–33, 39, 40, 41, 47, 50–54, & 86).

asserted in the Amended Complaint (other than in the form of conclusory statements) nor indicated by the bank statements attached as exhibits. Though whether the Defendant withdrew the funds for personal use is a fact "peculiarly within the Defendant's knowledge or control" that can be alleged "upon information and belief," the Plaintiff failed to provide a statement of the facts on which the Plaintiff's information and belief is founded. *Hill*, 2003 WL 22019936, at *3; *Taylor*, 551 B.R. at 521 (explaining that the plaintiffs alleged the defendant misappropriated funds for personal use based on a review of account statements and the debtor's testimony at her § 341 meeting); *Palm Beach Fin.*, 488 B.R. at 767. What "information" does the Plaintiff rely on to support her "belief" that the Defendant withdrew the funds for personal use that would provide the court with some indicia of the reliability of the Plaintiff's allegations? *See Lab. Corp.*, 290 F.3d at 1310–11. The Plaintiff offers none and therefore has failed to sufficiently plead misappropriation with particularity.

### B. Property Rights of Plaintiff and Scope of Use of the Funds

Even if the Plaintiff had satisfactorily alleged that the Defendant withdrew the funds for personal use, however, it failed to sufficiently plead that use was inconsistent with its property rights and the scope of Defendant's authorization to deal with the property. *See Smith*, 2021 WL 1234245, at *10; *McQuillian*, 509 B.R. at 785. The Plaintiff's assertions depend on the notion that it "entrusted" the funds to K&K and that "upon information and belief" those funds were "earmarked" for the Plaintiff.[12] As the Court previously explained, the Plaintiff not only failed to plead

---

[12] *See, e.g.*, (Doc. 34 at ¶¶ 31, 38, 44, 49, 67, 81, 83).

entrustment and earmarking, but the contract attached to the Amended Complaint directly contradicts the Plaintiff's conclusory allegations in this regard.

In support of its earmarking contention, the Plaintiff merely repeats that "upon information and belief" the funds were "earmarked" for the Plaintiff's benefit. For the same reasons previously explained, the Court concludes the Plaintiff failed to sufficiently allege that the funds were "earmarked" for the Plaintiff, thereby leaving no basis for the Court to conclude that the Defendant's withdrawal of the funds, even for personal use, was inconsistent with the Plaintiff's rights (because it retained no right to the funds) and the scope of the Defendant's authorization to deal with the funds (because the Defendant's use of the funds was not restricted).

## IV.  Conclusion

Viewing the Amended Complaint in the light most favorable to the Plaintiff and assuming the Plaintiff can sufficiently allege alter ego, the facts in the Amended Complaint establish, at best, that: (1) the Plaintiff and Defendant entered into a standard commercial contract that contained no entrustment or earmarking provisions; (2) the Defendant (as K&K) accepted funds under the contract, thereby lawfully obtaining them; (3) the Defendant withdrew the funds for personal use rather than for performance under the contract;  and (4) because the Defendant withdrew the funds, her business became insolvent and was unable to perform under the contract.  These facts do not and can never state a claim for embezzlement under § 523(a)(4) because they neither support the Plaintiff maintaining any ownership interest in the funds nor misappropriation of the funds. Instead, these facts appear

more akin to a standard breach of contract claim. The assertion that the Defendant acted with fraudulent intent does not cure the deficiencies because it is an additional and separate element necessary to state a claim for embezzlement. Allowing this claim to proceed, as alleged, risks transmuting a dischargeable debt for breach of contract to a nondischargeable debt for embezzlement. Binding precedent mandates that the Court narrowly construe all exceptions to discharge. *See United States v. Mitchell (In re Mitchell)*, 633 F.3d 1319, 1327 (11th Cir. 2011).

The Court is left with a conundrum. The Defendant's Motion largely rests on Rule 9 pleading deficiencies and seeks dismissal without prejudice. But the Court has concluded that certain defects in the Amended Complaint are incurable, and that the Plaintiff is unable to state a claim for embezzlement under § 523(a)(4). Where "a more carefully drafted complaint could not state a claim," dismissal with prejudice is appropriate. *Ziemba*, 256 F.3d at 1213; *see, e.g.*, *Durango Ga. Paper Co. v. Pension Benefit Guaranty Corp. (In re Durango Ga. Paper Co.)*, 539 B.R. 896, 905 (Bankr. S.D. Ga. 2015). While the Court does not take lightly the prospect of granting relief beyond that requested in Defendant's Motion, the Court concludes that dismissal with prejudice is appropriate under these circumstances.

Accordingly, the Court **ORDERS** that the *Motion to Dismiss* (Doc. 42) is **GRANTED**, the *Amended Complaint* (Doc. 34) is **DISMISSED WITH PREJUDICE**, and the Clerk is directed to **CLOSE THIS CASE**.

# # #

*Copies to Michael Gort, Esq. who is directed to serve this Order on all interested parties.*